**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **D.F. and D.F., on behalf of S.F.,** <br> Plaintiffs, <br> v. <br> **FREEHOLD REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION,** <br> Defendant. | Civil Action No. 24-369 (JTQ) <br> **OPINION** |

QUINN, U.S.M.J.

This matter involves a dispute over the enforcement of a settlement agreement between the parties that resolved an earlier administrative proceeding brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. Plaintiffs assert claims for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Before the Court are the parties' competing motions for summary judgment. For the reasons below, Plaintiffs' motion is denied, and Defendant's motion is granted in part and denied in part.

I. Background

A. S.F.'s Educational History and the Settlement Agreement

S.F., a student who resided within the Freehold Regional High School District (the "District"), had a history of mental health conditions and special educational

needs. *See* ECF No. 1 ¶¶ 8, 14-27. She had been diagnosed with a number of conditions, including Generalized Anxiety Disorder, Obsessive Compulsive Disorder, ADHD, Depression, and Post Traumatic Stress Disorder. *Id.* ¶ 14. From November 2019 through February 2020, S.F. received treatment at a residential program in Wisconsin. *Id.* ¶ 15. From July through September 2020, she attended a partial hospitalization program in New Jersey after she developed an eating disorder. *Id.* ¶ 16.

S.F. attended schools within the District as a ninth-grade student during the 2020-2021 school year and was eligible for special education and related services. *Id.* ¶ 17. During this school year, the District provided S.F. with several Individualized Education Programs ("IEPs") to address her needs. ECF Nos. 39-4, 39-5, and 39-6. Unfortunately, her conditions substantially interfered with her ability to attend school. Early in that school year, S.F. returned to Wisconsin, where from September 2020 through January 2021 she participated in treatment programs and then received outpatient treatment through February 2021. ECF No. 1 ¶ 19.

In January 2021, the District amended the classification under which S.F. was eligible for special education and related services from Other Health Impairment to Emotional Regulation Impairment ("ERI"). ECF No. 39-6. After completing treatment, S.F. returned to Marlboro High School with her updated IEP in place. ECF No. 1 ¶ 20.

During the 2021-2022 school year, which was S.F.'s tenth-grade year, the District developed several IEPs for her under the ERI classification. ECF Nos. 39-7,

39-8, 39-9, 39-10. Among other things, S.F.'s May 3, 2022 IEP provided for ERI special classes in English, Math, Science, Social Studies, and Physical Education/Health; a vocational assessment; weekly individual counseling; group counseling four times during each seven-day cycle; and various accommodations and modifications. ECF No. 39-10 at 14-16. The IEP also documented concerns that S.F.'s mental health conditions affected her ability to attend and participate in school. ECF No. 39-10 at 6.

S.F. continued to experience difficulty attending school. ECF Nos. 39-17 through 39-21. Ultimately, her parents applied to Sunrise Academy ("Sunrise"), a residential therapeutic school in Utah, and enrolled her there on or about April 18, 2022. ECF Nos. 40-3, Ex. B, ECF Nos. 39-15 and 39-26. Sunrise was not selected as S.F.'s placement through the IEP process; rather, her parents placed her there unilaterally. ECF No. 40-3, Howland Dep. 103:3-18.

On May 31, 2022, Plaintiffs initiated an administrative proceeding against the District concerning S.F.'s educational program and placement, and they sought, among other relief, continued placement at Sunrise at the District's expense. ECF No. 39-34. The parties ultimately resolved that proceeding through a Settlement Agreement and General Release (the "Agreement"). ECF No. 1, Ex. A. On February 2, 2023, Administrative Law Judge Jeffery L. Rabin entered a Final Decision Approving Settlement directing the parties to comply with the Agreement and concluding the administrative proceeding. ECF No. 40-5, Ex. L. That Agreement is at the center of this lawsuit.

Under the Agreement, Defendant agreed to provide Plaintiffs with partial reimbursement for specified educational expenses during the 2022-2023 and 2023-2024 school years. Specifically, the Agreement provides:

> The Parties agree that the Board will partly reimburse Parents for payment of tuition and related services to Sunrise, or another approved or accredited out-of-district educational program as well as transportation/travel expenses, and, evaluations, in annual amounts not to exceed the following, upon appropriate proofs demonstrating continued payments, continued residency, and school attendance. For the 2022-2023, the Board will pay up to $117,500 (one hundred and seventeen thousand five hundred dollars), and for the 2023-2024 school year, the Board will pay up to $117,500 (one hundred and seventeen thousand five hundred dollars). The parties acknowledge and agree that the Board's contribution is premised upon S.F. receiving special education and related services at Sunrise or another approved or accredited out-of-district educational program, and the Board shall not make any contributions under this agreement in the event S.F. is not receiving special education or related services.

ECF No. 1, Ex. A, § 1.

The Agreement contemplated reimbursement not only for S.F.'s continued attendance at Sunrise, but also for attendance at "another approved or accredited out-of-district educational program," provided that S.F. was receiving "special education and related services." *Id.* Under the Agreement, the District's reimbursement was capped at $117,500 for each of the two school years and was conditioned on "proofs demonstrating continued payments, continued residency, and school attendance." *Id.*

The Agreement further provides that, other than the amounts specified in the Agreement, the Board is not responsible for "any other portion of S.F.'s educational program or related services," and that the Board's "sole responsibilities regarding

S.F. hereafter are the financial obligations" set forth in the Agreement. *Id.* § 2. The Agreement also provides that the Board's "sole and final responsibility towards S.F." is implementation of the Agreement. *Id.* § 5.

S.F. remained at Sunrise through late March 2023. ECF No. 39-2 ¶ 117. She then enrolled at The Marvelwood School ("Marvelwood") in Kent, Connecticut, where she completed the remainder of her eleventh-grade year and returned for twelfth grade. ECF No. 39-35 at 46, 71. Plaintiffs sought reimbursement under the Agreement for expenses associated with S.F.'s attendance at both Sunrise and Marvelwood. ECF No. 39-35 at 2-10. As discussed in more detail below, the District reimbursed Plaintiffs for a portion of the expenses associated with Sunrise but did not reimburse any expenses associated with Marvelwood. Those reimbursement decisions have given rise to the present dispute.

B. Reimbursement for the 2022-2023 School Year

It is undisputed that for the 2022-2023 school year, the District paid Plaintiffs a total of $82,250 in connection with S.F.'s attendance at Sunrise. ECF Nos. 39-2 ¶ 110 and 48-1 ¶ 110. The payments consisted of $58,750 on February 2, 2023, $11,750 on April 27, 2023, and $11,750 on May 11, 2023. ECF No. 39-39.

The parties disagree as to whether those payments satisfied the District's obligations under the Agreement. Defendant argues that they did. It states that it calculated the reimbursement amount by dividing the $117,500 annual maximum by ten months ($11,750 per month) and then reimbursing Plaintiffs for the seven months the District determined that Plaintiffs had submitted adequate proofs of expenses.

ECF No. 39-1 at 21. Plaintiffs, on the other hand, contend that nothing in the Agreement authorizes that methodology and that, even under Defendant's methodology, two additional months of reimbursement are owed because S.F. attended Sunrise during July and August 2022 as well as during the traditional September through June school year. ECF No. 40-1 at 23-24.

The parties also dispute reimbursement for transportation, travel, and evaluation expenses incurred while S.F. attended Sunrise. With regard to such expenses, the record is somewhat inconsistent. In their motion, Plaintiffs assert that they incurred $74,301.45 in tuition, related services, and evaluation expenses, as well as $33,569 in transportation and travel expenses associated with Sunrise. ECF No. 40-1 at 23. In their October 26, 2023 demand letter to the District, Plaintiffs stated that during S.F.'s time at Sunrise they had incurred $120,193 in tuition, $33,869 in transportation and travel expenses, and $7,800 in evaluation expenses. ECF No. 39-35 at 4-6.

The record presently before the Court, however, includes documentation of $23,509.80 in transportation and travel expenses for six trips associated with Sunrise between April and December 2022. ECF No. 39-48. The supporting records reflect airfare, lodging, rental vehicles, parking, and other travel-related expenses. *Id.* For trips associated with Sunrise, some of the airfare included premium or first-class travel, and some of the claimed lodging was in Las Vegas, Nevada—at what Defendant alleges are luxury hotels—rather than in Utah. *Id.* Defendant declined to reimburse the claimed travel expenses, taking the position that at least some were

inflated, unnecessary, or outside the scope of the Agreement. ECF No. 42 at 16-17. Plaintiffs maintain that § 1 of the Agreement contains no limitation of that kind and did not give the District discretion to reject otherwise documented transportation and travel expenses as unreasonable. ECF No. 40-1 at 24. In this action, Plaintiffs seek $25,620.45 in additional reimbursement attributable to S.F.'s attendance at Sunrise during the 2022-2023 school year. ECF No. 40-1 at 6.

C. S.F.'s Placement and Program at Marvelwood

S.F. left Sunrise in late March 2023 and enrolled at Marvelwood on March 27, 2023. ECF No. 39-35 at 46. She attended Marvelwood through May 27, 2023 as a full-time eleventh-grade boarding student. *Id.* Marvelwood is accredited by the New England Association of Schools and Colleges. ECF No. 48-2. The District did not select Marvelwood as S.F.'s placement before her parents enrolled her there. ECF No. 40-3, Howland Dep. 104:14-25.

According to Plaintiffs, after S.F. made sufficient progress at Sunrise, she was able to transition to a less intensive residential setting but continued to require significant support for her specialized needs. ECF No. 39-35 at 8. S.F.'s parents, together with the Sunrise team and a placement consultant, identified Marvelwood as the next placement for that purpose. *Id.* Marvelwood described S.F.'s placement there as providing S.F. with an opportunity to "bridge the gap between a therapeutic and mainstream setting." *Id.* at 54. As S.F.'s records reflected that S.F. previously had been eligible for special education under the ERI classification, Marvelwood

placed her in a class called "Strategies II" with access to counseling and advisory programming. ECF No. 39-35 at 48.

Strategies II was a class in which students met with a teacher in groups of no more than four. *Id.* at 60. Marvelwood described the class as a regular, daily class designed to support executive functioning and academic independence with a focus on organization, time management, metacognition, self-awareness, academic skills, and management of stress and anxiety. *Id.* For S.F. specifically, Marvelwood identified areas of focus that included task initiation, addressing late or missed assignments, communicating with teachers and self-advocating, managing stress and anxiety, persisting with undesirable tasks, and scaffolding her workload to meet deadlines. *Id.*

Marvelwood also provided some counseling support. S.F. had access to counseling services through Greenwoods Counseling and met with a primary counselor. *Id.* at 49. She also had additional access to counseling as needed. *Id.* Marvelwood logged that S.F. attended eight counseling sessions between March 30 and May 12, 2023. *Id.* Marvelwood also had a consulting psychiatrist available for medication consultation and management. *Id.*

S.F. returned to Marvelwood in September 2023 for twelfth grade, enrolling as a full-time boarding student for the 2023-2024 school year. *Id.* at 71. For that year, Marvelwood recommended moving her from Strategies II to Strategies I to provide more intensive executive-functioning support. *Id.* at 60. In connection with that transition, Marvelwood identified areas of focus including task initiation, how to

handle missed assignments, self-advocacy regarding homework, and management of stress and anxiety. *Id.* Marvelwood also identified a series of accommodations for S.F., including extended time for tests and assignments, modified test forms when necessary, use of a planner, access to class notes and study guides, task checklists, receiving information in smaller portions, redirection and refocusing, and frequent progress checks. *Id.* at 61.

D. The Dispute Over Marvelwood Reimbursement

The parties began corresponding about reimbursement shortly after S.F. enrolled at Marvelwood. On May 5, 2023, the District's counsel advised Plaintiffs that reimbursement under the Agreement depended upon proof that S.F. was receiving special education and related services at Marvelwood. ECF No. 39-43. In explaining the type of proof the District sought, counsel stated that "[p]roof of special education will resemble an IEP." *Id.*

On June 20, 2023, after reviewing materials supplied by Plaintiffs, the District advised that it would not reimburse expenses associated with Marvelwood because "the proofs provided to date do not demonstrate that the student is receiving special education/related services at Marvelwood." ECF No. 39-45. Defendant reiterated its position in an August 30, 2023 letter from its counsel to Plaintiffs' counsel. ECF No. 39-46. This August 30 letter noted that Plaintiffs had stated in earlier correspondence[1] that Marvelwood "shall provide [S.F.] with education for the 2023-

[1] This earlier correspondence does not appear to be part of the summary judgment record.

2024 school year in accordance with Student's IEP and eligibility under Emotional Regulation Impairment." *Id.* The District further stated that, although Marvelwood offered S.F. accommodations, the materials submitted did not establish that Marvelwood provided S.F. with "special education and related services." *Id.* The District invited Plaintiffs to submit additional proofs demonstrating that Marvelwood provided S.F. such services. *Id.*

Marvelwood itself responded directly to the District's position. On September 28, 2023, Kathleen Loftus Stewart, Marvelwood's Director of Learning Support, wrote to the District's counsel regarding the education S.F. was receiving. ECF No. 39-35 at 28-29. Stewart acknowledged that Marvelwood "does not implement IEPs as would a public school or a state-approved special education school," but explained that the school uses IEPs and other educational records to assist its teachers in understanding and addressing students' learning needs. *Id.* at 28. Stewart asserted that, while S.F. had not been placed at Marvelwood through her IEP, she was receiving individualized instruction specialized to her needs. *Id.*

Stewart additionally stated that S.F.'s education was tailored to needs arising from S.F.'s ADHD, anxiety, depression, and related conditions; that she received instruction responsive to those needs; that instruction was modified as needed; that school personnel could intervene immediately when her conditions interfered with learning; and that S.F. had access to counseling when she became overwhelmed. *Id.* at 28-29. Stewart disputed the District's characterization of Marvelwood as providing only accommodations or a traditional boarding-school education. *Id.*

On October 26, 2023, Plaintiffs' counsel submitted additional materials to the District in support of reimbursement. ECF No. 39-35 at 10. These supporting materials included, among other things, Marvelwood's program descriptions for S.F., progress and attendance records, Stewart's September 28 letter, and an October 25, 2023 letter from S.F.'s treating psychiatrist. *Id.* at 11-75. Plaintiffs maintained that those materials demonstrated that Marvelwood was an accredited out-of-district educational program at which S.F. was receiving "special education and related services" within the meaning of § 1 of the Agreement. *Id.* at 2-10.

The District reiterated its position and did not reimburse Plaintiffs for any portion of S.F.'s Marvelwood expenses, eventually leading to this lawsuit. Defendant contends that the services provided at Marvelwood were principally accommodations and support available to general education students and did not constitute the type of special education and related services required by the Agreement. Plaintiffs, conversely, contend that Marvelwood's individualized instruction, Strategies programming, counseling, and other allegedly disability-responsive services satisfied that requirement.

In this action, Plaintiffs seek $9,629.55 in reimbursement attributable to Marvelwood for the remainder of the 2022-2023 school year and $85,646.24 for the 2023-2024 school year. Together with the $25,620.45 sought for Sunrise, Plaintiffs request that the Court award $120,896.24 in reimbursement, plus attorneys' fees and costs.

II. Analysis

A. Subject Matter Jurisdiction

Defendant first argues that this Court lacks subject matter jurisdiction to hear this case. This argument is without merit. The Court has federal question jurisdiction under 28 U.S.C. § 1331 because Count IV of Plaintiffs' Complaint asserts a claim under federal law, specifically Title II of the ADA. ECF No. 1 at 15. The Court has supplemental jurisdiction over Plaintiffs' related state-law claims under 28 U.S.C. § 1367(a). Consequently, Defendant's argument fails and does not require further discussion.

B. Standing/Capacity to Sue

Defendant also challenges Plaintiffs' standing to maintain this suit. This argument likewise fails.

Pursuant to Federal Rule of Civil Procedure 17, a guardian may bring suit on behalf of a minor, as S.F.'s parents did here. Fed. R. Civ. P. 17(c)(1)(A). However, there is no dispute that while S.F. was a minor when this case was filed, she reached the age of majority during the pendency of this lawsuit. *See* ECF No. 1 ¶ 1 (stating that S.F. was born in 2006). As a result, Defendant argues that S.F.'s parents no longer may pursue any of the claims in this case, and it is entitled to judgment as a matter of law. ECF No. 39-1 at 4. The Court disagrees.

First, S.F.'s parents are themselves parties to the Agreement, having executed it individually as well as on behalf of S.F. ECF No. 1, Ex. A at 9. It follows, therefore, that as parties to the Agreement they may pursue claims relating to its enforcement.

*See* Fed. R. Civ. P. 17 ("An action must be prosecuted in the name of the real party in interest.").

Second, while the ADA claim stands on different footing than claims seeking to enforce the Agreement, the change in S.F.'s legal status does not warrant the relief Defendant seeks. And none of the authority cited by Defendant supports the notion that dismissal of the ADA claim is *required* now that S.F. has reached the age of majority. Rather, Rule 17 provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The Court finds that the proper course here, were the ADA claim to proceed, would be to give Plaintiffs the opportunity to make the appropriate substitution. However, given the Court's disposition of Plaintiffs' ADA claim on this motion, *see infra*, that step is not necessary.

C. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the nonmoving party. *Williams v. Borough of West Chester*, 891 F.2d 458, 459-60 (3d Cir. 1989).

In deciding a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. The moving party bears the burden of establishing that no genuine dispute of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its threshold burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the nonmoving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

D. ADA Claim

In Count IV of the Complaint, Plaintiffs advance a claim of discrimination under the ADA. ECF No. 1 at 15. Plaintiffs contend that Defendant "engag[ed] in

discrimination against S.F." by way of "its refusal to abide by the Settlement Agreement." ECF No. 40-1 at 33. They point to the testimony of Jessica Howland, Defendant's Director of Special Services, and posit that "Defendant knew exactly what Plaintiffs['] protected rights were under the IDEA and NJAC and what the legal meaning of special education is" yet failed to act to prevent those rights from being violated when Defendant "eschew[ed] its Settlement Agreement payment obligations" and made a "deliberate choice not to pay what was agreed to under the Settlement Agreement," thereby "knowingly harming Plaintiffs['] rights." *Id.* at 34. Plaintiffs' argument, however, misses the mark.

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, to prevail on an ADA claim, Plaintiffs must demonstrate that S.F. "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability." *M.J.G. v. Sch. Dist. of Philadelphia*, 774 F. App'x 736, 742 (3d Cir. 2019). Further, to recover compensatory damages under the ADA, a plaintiff must prove intentional discrimination under a deliberate indifference standard. *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023). To make a showing of deliberate indifference, a party "must present evidence that shows both: (1) knowledge that a federally protected right is

substantially likely to be violated . . . and (2) failure to act despite that knowledge." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013).

Plaintiffs contend that Defendant's refusal to provide the reimbursement that they believe is required by the Agreement constituted disability discrimination against S.F. Their theory is that Defendant knew of S.F.'s disabilities[2] and special education rights, yet deliberately declined to make the required payments, thereby acting with deliberate indifference in violation of the ADA. ECF No. 40-1 at 32-35. But the Court finds that Plaintiffs' theory conflates an alleged failure to perform a contractual obligation with disability discrimination.

To establish liability here, Plaintiffs must show, among other things, that S.F. was denied benefits because of a disability. *M.J.G.*, 774 F. App'x at 742; *see also R.B. v. Middletown Township Board of Education*, 2026 WL 2718650, at *6 (D.N.J. Sept. 15, 2026) (a plaintiff "must prove that [she was] treated differently based on ... the existence of [her] disability."). Plaintiffs point to no evidence that would support such a finding. It is true that the Agreement concerns S.F.'s educational needs arising from her mental health conditions, but that fact, standing alone, does not establish that Defendant withheld reimbursement because of any disability S.F. may have. Nor do Plaintiffs identify evidence that Defendant's reimbursement decision resulted in S.F. being denied a benefit or otherwise subjected to discrimination by reason of her disability. At most, the evidence on which Plaintiffs rely shows that Defendant knew

---

[2] Defendant contends that S.F. is not "disabled" under the ADA. ECF No. 39-1 at 12. Because Plaintiffs have not established that Defendant's conduct constituted discrimination under the ADA, the Court need not reach that question.

of S.F.'s mental health conditions, understood the general requirements governing special education, and did not make payments to S.F.'s parents that Plaintiffs maintain were required by the Agreement. That evidence may relate to whether Defendant breached the Agreement, but it does not establish that the alleged breach constituted discrimination against S.F. on account of any disability. Because Plaintiffs have not established that Defendant's conduct constituted discrimination under the ADA, Plaintiffs' claim also fails irrespective of whether, as argued by Plaintiffs, Defendant acted with deliberate indifference. Accordingly, the Court grants Defendant's motion for summary judgment on the ADA claim and denies Plaintiffs' motion.

E. Breach of Contract/Declaratory Judgment

A settlement agreement is a contract that must be interpreted and enforced in accordance with principles of contract law. *Kelly v. Ewing Twp.*, 2026 WL 412440, at *3 (D.N.J. Feb. 13, 2026). Here, the Agreement provides that it is to be "interpreted, enforced, and governed under the laws of the State of New Jersey." ECF No. 1, Ex. A § 17.

Under New Jersey law, "[a] court's objective in construing a contract is to determine the intent of the parties." *Niemczyk v. Pro Custom Solar LLC*, 2025 WL 2837686, at *2 (D.N.J. Oct. 6, 2025) (quoting *Kernahan v. Home Warranty Adm'r of Fla. Inc.*, 199 A.3d 766, 777 (N.J. 2019)). The contract's language is the starting point of that inquiry. Where "the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would

lead to an absurd result." *Id.* (quoting *Barila v. Bd. of Educ. of Cliffside Park*, 230 A.3d 243, 255 (N.J. 2020)). In construing the agreement, however, the Court must read it "as a whole" and "in a fair and common sense manner," considering "the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." *Sandoz, Inc. v. United Therapeutics Corp.*, 2026 WL 3013574, at *4 (3d Cir. Oct. 7, 2026) (quoting *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958 (N.J. 2014)).

The Court must also give effect to all of the Agreement's terms and avoid an interpretation that would render contractual language meaningless. *Bolotina v. Cherry Hill Pub. Schs. Bd. of Educ.*, 2026 WL 626275, at *2 (D.N.J. Jan. 9, 2026) (citing *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010)). At the same time, a court may not "re-write a contract or grant a better deal than that for which the parties expressly bargained." *Id.*

A contract is ambiguous only if its language is "susceptible to at least two reasonable alternative interpretations." *Kelly v. Ewing Twp.*, 2026 WL 412440, at *3 (D.N.J. Feb. 13, 2026) (quoting *Capparelli v. Lopatin*, 212 A.3d 979, 992 (N.J. Super. Ct. App. Div. 2019)). In determining whether such an ambiguity exists, New Jersey law requires consideration of "all of the relevant evidence that will assist in determining the intent and meaning of the contract." *Sandoz*, 2026 WL 3013574, at *4. Thus, even where contractual language appears unambiguous on its face, "[e]vidence of the circumstances is always admissible in aid of the interpretation" of an integrated agreement. *Id.* If, after consideration of the relevant evidence, the

disputed provision remains susceptible to competing reasonable interpretations, summary judgment is inappropriate. *Id.*

To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Trustees of Int'l Union of Painters v. Independent Wallcovering, Inc.*, 2026 WL 1623075, at *2 (D.N.J. June 5, 2026). Accordingly, the Court must first determine the meaning of the disputed provisions of the Settlement Agreement and then determine whether the record establishes that either party failed to perform the obligations imposed by those provisions.

1. Sunrise Expenses

Plaintiffs contend that Defendant failed to fully reimburse them for expenses associated with S.F.'s attendance at Sunrise during the 2022-2023 school year. ECF No. 40-1 at 23-24. They argue that the Settlement Agreement required reimbursement for tuition and related services, transportation and travel expenses, and evaluations, up to an annual maximum of $117,500, and that nothing in the Agreement authorized Defendant to prorate that annual amount into a monthly maximum of $11,750. *Id.* Plaintiffs maintain that they incurred qualifying expenses in excess of the annual cap but received only $82,250 from Defendant, and therefore, Defendant remains obligated to reimburse additional expenses relating to S.F.'s attendance at Sunrise. *Id.*

Defendant does not challenge Sunrise's qualification as an eligible placement under the Agreement. Rather, it contends that Plaintiffs were entitled only to reimbursement for expenses for which they provided the proofs required by the Agreement. ECF No. 39-1 at 21-22; ECF No. 39-2 ¶¶ 106-110. Defendant explains that it allocated the $117,500 annual maximum over ten months, at $11,750 per month, and reimbursed Plaintiffs for seven months for which it determined that Plaintiffs had provided sufficient proof of payment, residency, and attendance. ECF No. 39-1 at 21; ECF No. 39-2 ¶¶ 108-110. Defendant further contends that it properly declined to reimburse certain claimed transportation and travel expenses because they were inflated, unnecessary, or otherwise outside the scope of the Agreement. ECF No. 42 at 16-18.

The Court concludes that neither party has established entitlement to summary judgment with respect to the Sunrise reimbursement claim. As noted, Section 1 of the Agreement provides for specified expenditures up to an annual maximum of $117,500, upon submission of appropriate proofs. ECF No. 1, Ex. A § 1. Although the Agreement establishes an annual reimbursement maximum, it does not expressly authorize Defendant to divide that amount into ten monthly installments of $11,750 or limit reimbursement according to the number of months for which it determined Plaintiffs had established eligibility. Thus, Defendant's application of this methodology, standing alone, does not establish that its $82,250 payment satisfied its obligations under the Agreement.

Nevertheless, Plaintiffs' challenge to that methodology does not establish their entitlement to additional reimbursement. While the Agreement provides a ceiling on Defendant's financial obligations, it does not guarantee a payment of $117,500. The relevant inquiry is whether Plaintiffs adequately substantiated qualifying expenses for any reimbursement they claim remained due.

On the present record, Plaintiffs have not established their entitlement to the additional $25,620.45 they seek. As an initial matter, their submissions contain materially different figures concerning Sunrise tuition, evaluations, and transportation and travel expenses. *Compare* ECF No. 40-1 at 23 (identifying $107,870.45 in Sunrise expenses), *with* ECF No. 39-35 at 4 (identifying $161,862 in Sunrise expenses). Although the record contains a letter from Plaintiffs' counsel to the District stating that Plaintiffs previously submitted proofs supporting their reimbursement requests for Sunrise, those proofs do not appear to be included with Plaintiffs' motion. ECF No. 39-35 at 4. The evidence provided with this motion does not conclusively establish either the amounts of any allegedly qualifying expenses incurred or the adequacy of any previously submitted supporting documentation.

The parties also dispute whether certain transportation and travel expenses qualify for reimbursement, and issues of fact preclude summary judgment for either party. While the Agreement expressly includes reimbursement for "transportation/travel expenses," ECF No. 1, Ex. A § 1, Defendant challenges certain claimed expenditures as inflated, unnecessary, or outside the scope of the Agreement. ECF No. 42 at 16-17. Plaintiffs, on the other hand, contend that the Agreement

neither imposes conditions on transportation and travel reimbursement nor gives Defendant unfettered discretion to determine which expenses it will reimburse. ECF No. 48 at 24-25.

"Under New Jersey law, [the Court] must interpret the parties' contract according to its plain language, by reading the document as a whole in a fair and common sense manner." *Hill v. Sloppy Vinyl, LLC*, 2026 WL 622678, at *6 n.5 (D.N.J. Mar. 5, 2026). Here, the Agreement provides for reimbursement of transportation and travel expenses in connection with S.F.'s qualifying educational placement. ECF No. 1, Ex. A § 1. As such, that provision cannot reasonably be construed as requiring reimbursement for expenditures unrelated to the educational purposes contemplated by the parties merely because they were incurred during any travel associated with Sunrise.

At the same time, however, the Agreement does not categorically exclude premium airfare or particular types of lodging. The scope of that provision must be determined in accordance with the parties' reasonable expectations and the purpose of the Agreement. Thus, whether the claimed expenses fall within the parties' contemplated reimbursement obligation depends on their nature, purpose, and relationship to S.F.'s educational placement. The record with respect to these questions is, at best, sparse, and the evidence presently before the Court neither establishes that all of Plaintiffs' claimed expenditures are reimbursable as a matter of law nor establishes that Defendant properly rejected them in their entirety. Fact questions exist as to the expenditures' relationship to the purposes contemplated by

the parties under the Agreement. Accordingly, the dispute concerning the claimed transportation and travel expenses further precludes summary judgment in either party's favor on that question.

In sum, genuine issues of material fact exist with respect to whether Plaintiffs were properly reimbursed for the expenses incurred during S.F.'s attendance at Sunrise. Both parties' motions are denied with respect to those claims.

2. Marvelwood Expenses

The parties dispute whether Defendant was obligated to reimburse Plaintiffs for expenses associated with S.F.'s attendance at Marvelwood. Plaintiffs contend that Marvelwood qualified as an accredited out-of-district educational program and that S.F. received "special education and related services" within the meaning of the Agreement. ECF No. 40-1 at 15-18. Relying on the definition of special education under the IDEA, Plaintiffs argue that the Agreement did not require Marvelwood to implement S.F.'s IEP or provide a particular educational program prescribed by it. *Id.* at 4; ECF No. 48 at 20. Rather, Plaintiffs maintain that Marvelwood satisfied the Agreement's requirements by providing individualized instruction, counseling, and other services and support tailored to S.F.'s disability-related needs. *Id.*

Defendant, conversely, maintains that Marvelwood was a general education boarding school that provided S.F. with academic accommodations and support services, but not the specially designed instruction required to constitute special education. ECF No. 39-2 ¶115. Defendant argues that S.F. did not receive qualifying services because Marvelwood did not implement S.F.'s IEP, provide specialized

instruction addressing her Emotional Regulation Impairment classification, or offer the structured counseling and therapeutic programming contemplated by her IEP and previously provided at Sunrise. ECF No. 49 at 7-8. According to Defendant, Plaintiffs therefore failed to establish that S.F. received the qualifying services required by the Agreement, and no reimbursement for Marvelwood expenses was owed.

The Agreement conditions Defendant's reimbursement obligation upon S.F.'s receipt of "special education and related services" at Sunrise or another approved or accredited out-of-district educational program. ECF No. 1, Ex. A, § 1. The Agreement does not define "special education and related services." Courts interpreting a contract consider its language and the circumstances surrounding its execution to ascertain the parties' intended meaning. *Conway v. 287 Corp. Ctr. Assocs.*, 187 N.J. 259, 269-70 (2006). Here, the Agreement arose from an administrative proceeding concerning the educational services and placement appropriate for S.F., who had been determined eligible for special education under an ERI classification. ECF Nos. 39-10, 39-34. Thus, the requirement that S.F. receive "special education and related services" must be understood in the context of the parties' settlement of their dispute concerning her educational needs and placement.

The Agreement does not expressly require that any subsequent placement implement S.F.'s existing IEP, provide instruction in accordance with a particular disability classification, or replicate the therapeutic programming offered at Sunrise. Nevertheless, S.F.'s May 2022 IEP identified significant educational needs and

prescribed, among other services, specialized ERI instruction, individual and group counseling, and various instructional accommodations and modifications. ECF No. 39-10. The IEP thus provides important context for understanding the nature of the educational needs the parties contemplated would be addressed through a qualifying placement.

The Court does not conclude, however, that the parties intended every future placement to strictly implement each and every provision of that IEP. While the Agreement expressly permits reimbursement for attendance at another qualifying educational program, it does not incorporate the IEP as a mandatory educational plan. ECF No. 1, Ex. A, § 1. Accordingly, the Court finds that the IEP is relevant evidence of S.F.'s identified educational needs in connection with the Agreement and provides a meaningful point of comparison, but strict compliance with its particular requirements is not itself a condition of reimbursement.

The Agreement also does not expressly incorporate the IDEA's statutory and regulatory definitions. Nevertheless, the Agreement arose from an administrative proceeding concerning S.F.'s entitlement to special education, and the parties employed some terminology associated with that statutory framework. Accordingly, the IDEA's definitions provide some relevant context for interpreting the contractual language. *See* 20 U.S.C. § 1401(29) (defining "special education" as "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability"); 34 C.F.R. § 300.39 (further defining "special education"). Although these definitions help inform the Court's interpretation, the Agreement does not expressly

require that an educational program comply with all procedural and substantive requirements under the IDEA.

Applying the above principles, the Court finds that genuine disputes of material fact preclude summary judgment for either party concerning whether S.F. received qualifying services at Marvelwood.

The evidence produced by the parties shows that Marvelwood provided S.F. with a variety of educational and emotional supports. Although the existence of these supports is documented, material questions remain concerning their nature and implementation. Defendant, for example, disputes that Marvelwood furnished specialized instruction qualifying as "special education" under the Agreement. The District's Director of Special Services, Jessica Howland, testified that the services reflected in Marvelwood's records were general education accommodations rather than modified instruction, curriculum, or assessments. ECF No. 40-3, Howland Dep. 115:20-116:10. This evidence thus raises a material question concerning whether the instruction and academic support S.F. received were specifically tailored to her disability-related educational needs or consisted primarily of general academic assistance and accommodations. The present record does not permit the Court to resolve that question as a matter of law.

The record also presents questions concerning the nature and extent of the counseling and therapeutic support S.F. received. Marvelwood represented that S.F. had individualized access to counseling and immediate intervention when emotional difficulties interfered with her ability to attend or participate in classes. ECF No. 39-

35 at 28-29, 49-50. Its records document eight counseling sessions between March 30 and May 12, 2023, and numerous interventions addressing S.F.'s difficulty waking and reporting to class. *Id.* at 49-50. Defendant emphasizes that the records do not establish the frequency of individual counseling or the group counseling prescribed by S.F.'s IEP and do not document a therapeutic program comparable to Sunrise's. ECF No. 39-2 ¶¶ 153-158; ECF No. 49 at 7-8. Although the Agreement does not necessarily require counseling of the same type or frequency specified in the IEP, the IEP is nevertheless evidence of S.F.'s identified educational needs and the types of specialized instruction and related services considered necessary to address them. The nature and extent of the counseling and disability-related interventions that were actually provided remain relevant to determining whether S.F. received qualifying services under the Agreement.

Viewed in Plaintiffs' favor, Marvelwood's descriptions of individualized instruction, disability-responsive programming, and counseling could support a finding that S.F. received qualifying special education and related services. Conversely, viewed in Defendant's favor, the evidence concerning Marvelwood's general education program, the accommodations documented in its records, and the nature and extent of the instructional and counseling services provided could support a contrary finding. As such, genuine disputes of material fact preclude summary judgment for either party.

Accordingly, the Court concludes that neither party has demonstrated entitlement to judgment as a matter of law on the question whether the services S.F.

received at Marvelwood satisfied the Settlement Agreement's requirement that she receive special education and related services. The parties' cross-motions for summary judgment are therefore denied with respect to reimbursement for expenses associated with Marvelwood.

F. Good Faith and Fair Dealing

A plaintiff may not maintain a separate implied-covenant claim that merely duplicates an alleged breach of an express contractual obligation. *Wark v. J5 Consulting, LLC*, 2023 WL 6366731, at *10 (D.N.J. Sept. 29, 2023). Here, Plaintiffs' breach of contract claim and good faith and fair dealing claim rest on the same alleged failure to perform, specifically, Defendant's failure to provide reimbursement to Plaintiffs for certain expenses Plaintiffs contend that they are entitled to under the Agreement. The present record supplies no independent basis on which a reasonable factfinder could find bad faith performance or abuse of contractual discretion distinct from that alleged nonperformance. Accordingly, the implied covenant claim fails as duplicative, and Defendant's motion is granted as to this claim.

III. Conclusion

For the reasons above, Plaintiffs' motion is denied, and Defendant's motion is granted in part and denied in part. An appropriate Order accompanies this Opinion.

*s/ Justin T. Quinn*

**HON. JUSTIN T. QUINN**
**UNITED STATES MAGISTRATE JUDGE**